**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Yan KATS, Defendant–Appellant.**

**No. 87–5108.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1988.

Decided April 3, 1989.

Mark E. Beck, Beck & De Corso, Los Angeles, Cal., for defendant-appellant.

Brian J. Hennigan, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BROWNING, WALLACE and BRUNETTI, Circuit Judges.

PER CURIAM:

Yan Kats appeals his conviction for conspiracy to commit Medicare fraud and for receipt of kickbacks in exchange for referral of Medicare payments, in violation of 18 U.S.C. § 371 and 42 U.S.C. § 1395nn(b)(1). We affirm.

I.

Lauro Manigbas, owner of Tech Diagnostic Medical Lab (Tech–Lab), agreed to kick back 50 percent of the Medicare payments received by Tech–Lab as a consequence of referrals from Total Health Care (THC), a medical services company owned by David

Smushkevich and operated by Robert Sheppard. Under the scheme, THC collected blood and urine samples from medical offices and clinics in southern California and forwarded them to Tech–Lab for laboratory work. Tech–Lab billed THC, which billed the private insurance carrier or the government-funded insurance programs, Medi–Cal and Medicare. Tech–Lab "kicked back" half its receipts to THC.

In early 1985, Smushkevich and Manigbas arranged an identical scheme involving Tech–Lab and Smushkevich's latest venture, A Community Medical Clinic (Community Clinic). Kats, the appellant here, subsequently purchased a 25 percent interest in Community Clinic and began collecting payments under the scheme.

A grand jury returned two indictments, one charging Smushkevich, Kats and Community Clinic co-owner Lazar Berkovich with violations of 18 U.S.C. § 371 and 42 U.S.C. § 1395nn(b), the second charging Smushkevich and Sheppard with violations of the same statutes. The jury convicted Kats on conspiracy and receipt counts, but acquitted him on a charge of solicitation. Kats was sentenced, and appealed.

## II.

■ Kats contends the district court erred in admitting a plea agreement between the government and Manigbas, who testified against Kats at trial. Though partially redacted by the court, the version of the agreement given to the jury contained several promises by Manigbas to give "truthful testimony," and retained in the government the power to rescind its grant of partial immunity if "Mr. Manigbas is not completely truthful." These terms, Kats argues, created an impression with the jury "that the government was vouching for the witness."

The prosecution may not vouch for its witness by " 'plac[ing] the prestige of the government behind the witness' through personal assurances of the witness's veracity." *United States v. Wallace,* 848 F.2d 1464, 1473 (9th Cir.1988) (quoting *United States v. Roberts,* 618 F.2d 530, 533 (9th Cir.1980)). However, "[w]e have made it clear that references to requirements of truthfulness in plea bargains do not constitute vouching when the references are responses to attacks on the witness' credibility because of his plea bargain." *United States v. Shaw,* 829 F.2d 714, 716 (9th Cir.1987); *accord Wallace,* 848 F.2d at 1474; *United States v. Rohrer,* 708 F.2d 429, 433 (9th Cir.1983); *United States v. Tham,* 665 F.2d 855, 861–62 (9th Cir.1981).

The trial transcript reveals defense counsel attacked Manigbas' credibility and, in doing so, placed the contents of the plea bargain at issue by questioning the witness about its terms, specifically in regard to whether the agreement granted Manigbas immunity in exchange for his testimony. It was only after this cross-examination that the government moved for admission of the agreement. In these circumstances, admission of the agreement was not an abuse of discretion. *Rohrer,* 708 F.2d at 432–33. Moreover, any potential prejudice was cured by the district court's explicit instruction to the jury that the statements of a witness testifying in exchange for partial immunity "should be examined with greater care than the testimony of an ordinary witness. In evaluating such testimony, you should consider whether it may have been influenced by the government's promise of immunity...." 2 Clerk's Transcript 63, at 6a; *see Shaw,* 829 F.2d at 716–18; *United States v. Brooklier,* 685 F.2d 1208, 1218–19 (9th Cir.1982).

Kats' attack on the admission of the plea agreement rests entirely on two of our previous cases, *United States v. Roberts,* 618 F.2d 530 (9th Cir.1980), and *United States v. Brown,* 720 F.2d 1059 (9th Cir. 1983), but neither supports his position. In *Roberts,* unlike this case, the prosecution in closing argument referred to evidence not in the record and stated that a detective was monitoring the government witness for truthfulness, 618 F.2d at 533–34, while in *Brown,* the plea agreement required the witness to submit to a polygraph examination, which the government during the trial referred to as a means of ensuring that its witness told the truth. 720 F.2d at 1070–74.

### III.

▆ Kats argues that in instructing the jury on the solicitation charge (on which Kats was acquitted) the court correctly limited the definition of a "kickback" by requiring the jury to find "beyond reasonable doubt that one of the material purposes for the solicitation was to obtain money for the referral of services,"[1] but incorrectly allowed the jury to convict on the remaining charges even if it found the referral of services was not a material purpose of the payments.[2]

As we read the record, both the definition of "kickback" Kats endorses and the definition he attacks were made applicable to all other counts by express reference. Taken together, as they must be, see United States v. Jackson, 845 F.2d 880, 883 (9th Cir.1988), the two instructions were complementary, not conflicting.

▆ Moreover, the admonition that the jury could convict unless it found the payment "wholly and not incidentally attributable to the delivery of goods or services" accurately stated the law. As the Third Circuit recently explained, the Medicare fraud statute is violated if "one purpose of the payment was to induce future referrals," United States v. Greber, 760 F.2d 68, 69 (3d Cir.1985), "even if the payments were also intended to compensate for professional services." Id. at 72.

Greber's interpretation is consistent with the legislative history. As Greber explains, Congress enacted the Medicare–Medicaid Anti–Fraud and Abuse Amendments, Pub.L. No. 95–142, 91 Stat. 1175 (1977), in an attempt to deter the growing problem of fraud and abuse in the system by increasing the severity of the offense from a misdemeanor to a felony and by enacting § 1395nn(b)(2), which includes an expansive list of proscribed payments. See 760 F.2d at 70–71; H.R.Rep. No. 95–393(II), 95th Cong., 1st Sess. 46–48, 53, reprinted in 1977 U.S.Code Cong. & Ad.News 3039, 3048–50, 3056. Taking note of these concerns, the Greber court concluded, "[e]ven if the physician performs some service for the money received, the potential for unnecessary drain on the Medicare system remains." 760 F.2d at 71. We agree.

### IV.

▆ Finally, Kats objects because the two indictments were consolidated for trial and his motion to sever was denied. Joinder was proper because the crimes charged "arose out of the same series of transactions," if not the same transaction. United States v. Patterson, 819 F.2d 1495, 1501 (9th Cir.1987) (quotation omitted). Manigbas paid kickbacks to both sets of overlapping defendants—Smushkevich and Sheppard under the first agreement; Smushkevich, Kats and Berkovich under the second.

Denial of Kats' motion to sever was not so manifestly prejudicial as to demand reversal. Id. at 1501; United States v. Burgess, 791 F.2d 676, 678 (9th Cir.1986). Though not decisive, the court's careful instructions to the jury were helpful in neutralizing any potential prejudice. See United States v. Douglass, 780 F.2d 1472, 1479 (9th Cir.1986). It is evident from the verdicts that the jury was able to "fairly compartmentalize" the conspiracy, solicitation and receipt charges as to each of the defendants: one defendant was fully acquitted, two were found guilty on all charges, and Kats was acquitted on the

---

**1.** The complete instruction read:

The government must prove beyond reasonable doubt that one of the purposes for the solicitation of a remuneration was to obtain money for the referral of services which may be paid in whole or in part out of Medicare funds. It is not a defense that there might have been other reasons for the solicitation of a remuneration by the defendants, if you find beyond reasonable doubt that one of the material purposes for the solicitation was to obtain money for the referral of services.

It is entirely up to you to decide whether the solicitation of a remuneration was, at least in material part, for the referral of services.

**2.** The judge instructed the jury:

The term "kickback" does not mean only the secret return of a sum of money received. "Kickback" also includes a payment for granting assistance to one in a position to control a source of income, unless such payment is wholly and not incidentally attributable to the delivery of goods or services.

solicitation charge but convicted on the conspiracy and receipt charges. *Cf. Patterson,* 819 F.2d at 1501; *United States v. Ramirez,* 710 F.2d 535, 546 (9th Cir.1983).

AFFIRMED.