**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-1748

_____

ALAN E. COOPER, MD, for himself and on
behalf of the United States of America,
                                                        Appellant

v.

POTTSTOWN HOSPITAL CO LLC, d/b/a Pottstown Memorial
Medical Center; COMMUNITY HEALTH SYSTEMS
PROFESSIONAL SERVICES CORP

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court Civil No. 2-13-cv-01137)
District Judge:  Honorable Norma L. Shapiro

_____

Submitted Under Third Circuit LAR 34.1(a)
November 20, 2015

BEFORE:  AMBRO, HARDIMAN, and NYGAARD, *Circuit Judges*

(Opinion Filed:  June 10, 2016)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

NYGAARD, *Circuit Judge.*

Alan Cooper appeals the District Court's grant of motions to dismiss brought by Pottstown Hospital Co. LLC (d.b.a. Pottstown Memorial Medical Center) and Community Health Systems Professional Services Corp (CHSPSC).[1] He contends that his complaint is well-pleaded, asserting claims under 42 U.S.C. § 1320a-7b, the Medicare and Medicaid Patient Protection Act of 1987 (Anti-Kickback Statute), and 31 U.S.C. §§ 3729 - 3733, the False Claims Act. We will affirm the order of the District Court.

This opinion does not have any precedential value. Therefore, our discussion of the case is limited to covering only what is necessary to explain our decision to the parties.

A cause of action under the False Claims Act must prove that the defendant made a claim, or caused a claim to be made, for payment by the government that the defendant knew was false or fraudulent. *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011). The Anti Kickback Statute includes the following:

> (1) Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind--(A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program.

---

[1] In its brief, Community Health Systems Professional Services Corp. notes that it is presently known as CHSPSC, LLC. We will refer to this party as CHSPSC.

42 U.S.C.A. § 1320a-7b(b)(1)-(b)(1)(A). Violations of the Anti-Kickback Statute, under the Affordable Care Act, "constitute a false or fraudulent claim for purposes of [the False Claims Act]." 42 U.S.C. § 1320a-7b(g).

Cooper alleges that Pottstown violated the Anti-Kickback Statute by contracting twice with him to be an on-call physician. He asserts that, although he was unaware of the scheme, the real purpose of these contracts was to ensnare him in a scheme in which Pottstown paid him for on-call services in exchange for his exclusive referral of Medicare-eligible patients to Pottstown. Cooper further alleges that Pottstown falsely certified compliance with the Anti-Kickback Statute each time it submitted a claim for payment to the government arising from services to Medicare patients that he referred. *U.S. ex rel. Wilkins,* 659 F.3d at 304. Finally, he asserts that CHSPSC is liable for its role in authorizing and encouraging the on-call contracts that Cooper claims grounded the kickback scheme.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). As for causes of action under the False Claims Act "it is sufficient for a plaintiff to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Foglia v. Renal Ventures*

3

*Mgmt, LLC*, 754 F.3d 153, 156 (3d Cir. 2014)(quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009).).

The simple fact that a payment was made to Cooper as remuneration (implying that services were rendered) is not fatal to his claim. *United States v. Greber*, 760 F.2d 68, 71 (3d Cir. 1985). However, as the District Court correctly highlighted, the problem with Cooper's complaint is that he avers a contractual relationship between Pottstown and himself that is indistinguishable from a standard business transaction. His claim relies heavily on the timing of his dismissals to Pottstown's discovering (in the case of the first contract) that he owned an interest in, and was referring patients to, a medical practice that was competing with Pottstown;[2] and (in the case of the second contract) that he was employed by St. Joseph's Medical Center, another hospital in the same geographic locale as Pottstown. Cooper also avers that he was the only on-call surgeon who was terminated in both instances. He is convinced that this shows Pottstown retaliated against him because he was not referring Medicare patients exclusively to Pottstown. Cooper says this is enough to survive a motion to dismiss.

---

[2] Cooper alleges that further evidence of Pottstown's intent is that, during his first on-call contract, the Chief Executive Officer for Pottstown met with him and insisted that he give up his financial interest in the rival medical practice. He avers that his ownership interest was at issue, and that he was told that he was either on Pottstown's side or "the other side." J.A. 0033. He characterizes these meetings as composed of threats, inquiries and ultimatums by Pottstown officials. We are to infer from this that referrals were the focus of these meetings, and that this demonstrates their prior intent to exchange referrals for the on-call contract. However, apart from the fact that this meeting occurred well after he had contracted with Pottstown, the plausibility of this inference is undercut by the fact that Pottstown later extended a second on-call contract to him and allowed him to keep his ownership interest in the competing practice.

However, two problems undermine Cooper's cause.  First, as we state above, he does not aver any facts to enable the Court to plausibly distinguish the relationship between Pottstown and himself from a typical arms-length contract in which compensation is paid solely in exchange for on-call services.  He does not allege that, at the time that the contracts were executed, Pottstown did or said anything to ground an inference that it intended to induce him to exclusively refer patients to Pottstown.  Nor does he aver, for instance, that Pottstown had no need for his on-call medical services or that his compensation greatly exceeded market expectations.  His complaint is devoid of any indicia of Pottstown's intent to operate a kickback scheme.

Instead, Cooper relies on characterizations of the contract as a "reward" by Pottstown and his termination as a "punishment."[3]  But, attaching conclusory labels to ordinary, lawful acts of business does not suffice.  He also asserts that Medicare claims submitted from services he rendered ground a claim of Anti-Kickback Statute violations because Pottstown falsely certified that these claims complied with the Anti-Kickback Statute.  *U.S. ex rel. Wilkins*, 659 F.3d at 305.  However, such violations would occur only in instances where there were, in fact, kickbacks relating to Medicare patients.  Cooper provides nothing beyond conclusory statements to the effect that Pottstown received large Medicare reimbursements from the government that flowed from illegal kickbacks.  This is insufficient.

---

[3] Cooper casts suspicion on the fact that the remuneration was paid irrespective of the number of calls he actually made while on duty.  However, he does not substantiate this as an unusual practice and, without more, we conclude that this does not provide a plausible basis for his claims.

The second problem is that, because he relies on his termination as the principal evidence of Pottstown's intent to engage in kickbacks, the record before us contains undisputed facts that (even granting every inference in Cooper's favor) undermine his claims. Cooper avers that he and Pottstown were empowered to terminate both contracts at will. Additionally, both contracts specified that the compensation was not in exchange for the referral of patients.[4] Cooper also avers that, several months after terminating his first contract, Pottstown gave him a second on-call contract that did not impede him from retaining his interest in the rival practice. This contradicts his assertion that Pottstown's purpose for the original contract was to induce him into an exclusive referral scheme.

Moreover, there is no dispute that the second contract contained a non-compete employment clause that encompassed medical care facilities within a thirty mile radius. Therefore, Pottstown was wholly within its right to terminate the contract upon discovering that Cooper had breached it by accepting employment at an excluded medical facility. Cooper points to other physicians who were not fired at that time as evidence of his being singled out for retribution, but this does not help his cause. We will not infer nefarious intent based solely upon a party's conduct that is completely consistent with a

---

[4] "The parties expressly agree that nothing contained in this Agreement shall require [Cooper] to refer or admit any patients to" PMMC, and that "neither party will knowingly or intentionally conduct himself in such a manner as to violate the prohibition against fraud and abuse in connection with the Medicare and Medicaid programs." JA 54 (§ 5.6). Cooper interprets this as evidence of an intent to hide the kickback scheme. Without facts indicative of contrary intent, however, we must interpret this provision of the contracts in a manner consistent with its plain meaning.

6

contract that, on its face, bears no evidence of illegality. The District Court did not err by dismissing the cause.

Cooper's claims against CHSPSC must also fail. The District Court properly concluded that CHSPSC's liability is premised on authorizing and encouraging Pottstown's conduct regarding its contract with Cooper.[5] Therefore, by concluding that Cooper did not meet his burden in pleading Anti-Kickback Statute claims against Pottstown, it eliminated the basis for any argument that the claims against CHSPSC should stand.

Finally, we reject Cooper's claim that the District Court erred by dismissing the claim with prejudice. Given the sparsity of his pleadings and the lack of a draft amended complaint for the District Court to review, the District Court was well within its discretion to deny Cooper an opportunity to amend.

For all of these reasons, we will affirm the order of the District Court.

---

[5] We note, in addition, that CHSPSC was not a party to either contract at issue, and Cooper provided no factual basis to infer that CHSPSC filed, or caused to be filed, or provided any material assistance in the filing of any false claim for remuneration, nor received any compensation from such claims.