NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

DEC 29 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SHEILA HARRIS,

Defendant-Appellant.

No.    19-10006

D.C. No. 1:17-cr-00001-HG-1

MEMORANDUM*

Appeal from the United States District Court
for the District of Hawaii
Helen W. Gillmor, District Judge, Presiding

Argued and Submitted October 22, 2020
Honolulu, Hawaii

Before:  WALLACE, BEA, and BENNETT, Circuit Judges.

A jury convicted Sheila Harris of eleven counts of wire fraud, two counts of

aggravated identity theft, and four counts of making false statements relating to

health care matters.  She appeals from her convictions, her seventy-month

sentence, and the orders of restitution and forfeiture.  In a concurrently filed

opinion, we address Harris's argument that her identity theft convictions under 18

---

*       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

U.S.C. § 1028A should be reversed because her conduct did not amount to "use" of another's identification under the statute. We address Harris's other challenges here.

We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm.

1. Harris argues that the district court erred in admitting evidence of uncharged fraudulent transactions and "other acts" evidence because such evidence was (1) irrelevant and (2) "misleading, overbroad and prejudicial" under Federal Rule of Evidence ("Rule") 403. We review the admission of evidence for abuse of discretion. *United States v. Salcido*, 506 F.3d 729, 732 (9th Cir. 2007) (per curiam).

The district court held that the evidence of uncharged transactions was relevant to prove an element of wire fraud, "the existence of a scheme to defraud." *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013). Generally, evidence of uncharged transactions is admissible for this purpose. *See United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016). The district court held that the "other acts" evidence was relevant and admissible under Rule 404(b)(2) to prove Harris's "motive, knowledge, intent, plan, modus operendi [sic], absence of mistake, and lack of accident with respect to the claims for speech therapy submitted to Tricare."

2

Harris offers no legal argument explaining why the district court's relevancy determinations were erroneous. She also does not explain how the challenged evidence was misleading, overbroad, or prejudicial under Rule 403. In fact, the challenged evidence was manifestly relevant and went directly to Harris's guilt. The district court did not abuse its discretion in admitting it.

2.    Harris argues that her Sixth Amendment right to confrontation was violated when the district court permitted two witnesses, Julie Marlowe and Samantha Vega, to testify by two-way video. Applying a Ninth Circuit decision issued after Harris's trial, *United States v. Carter*, 907 F.3d 1199 (9th Cir. 2018), we agree. *Carter* held that "[c]riminal defendants have a right to 'physical, face-to-face confrontation at trial,' and that right cannot be compromised by the use of a remote video procedure unless it is 'necessary' to do so and 'the reliability of the testimony is otherwise assured.'" *Id.* at 1202 (quoting *Maryland v. Craig*, 497 U.S. 836, 850 (1990)). *Carter* pointed out that two-way video testimony is unnecessary when the witness can be deposed. *Id.* at 1209.

Here, the witnesses were unable to travel from the mainland United States to Hawaii for trial because they had to care for their disabled children, and because Vega's husband was deployed overseas with the U.S. military. The record does not reflect, however, that the witnesses were unavailable for depositions near their respective homes. Indeed, the government had sought to admit deposition

3

testimony of Vega, and only in the alternative did it request the court's permission for Vega to testify by two-way video. The district court granted the government's request for Vega to testify by two-way video, reasoning that "[l]ive video conferencing is preferable to deposition testimony" and relying on an out-of-circuit case *United States v. Gigante*, 166 F.3d 75 (2d Cir. 1999). Our court in *Carter*, however, held the opposite with respect to the preferability of depositions. 907 F.3d at 1209. Because this alternative was available to preserve Harris's right to physical face-to-face confrontation, two-way video testimony was not "necessary," and thus Harris's confrontation rights were violated under *Carter*.

The error, however, was harmless beyond a reasonable doubt. *See id.* at 1210. Vega and Marlowe provided testimony about the frequency and duration of the speech therapy services provided to their children, and that testimony supported Harris's overall scheme to defraud. But nine other parents gave similar testimony, and several therapists and others who had worked for Harris's business, Harris Therapy, Inc. (Harris Therapy), also provided testimony supporting Harris's scheme to defraud. And the government presented emails, text messages, claim forms, and other documents supporting Harris's fraudulent scheme. Thus, Marlowe's and Vega's testimony was cumulative of other overwhelming evidence establishing Harris's guilt in a scheme to defraud.

The violation was also harmless beyond a reasonable doubt as to Counts 15

4

and 16. Counts 15 and 16 related to false treatment notes for Marlowe's and Vega's children, but Marlowe and Vega did not provide any testimony about the creation or submission of the false notes. Rather, the following was the crucial evidence supporting Counts 15 and 16: (1) copies of Harris Therapy employee and speech therapist Erica Apana's original notes; (2) copies of the altered notes that had been submitted to TRICARE; (3) Apana's testimony that she created the original notes and did not create the altered notes; (4) Harris Therapy employees and speech therapists Kara Spheeris's and Terri LeSage-Oyamot's testimony that they did not treat the patients identified in the altered notes and did not create the altered notes;[1] and (5) Harris Therapy employee Abigail Fiesta's testimony that, at Harris's direction, she created the altered notes and submitted them to TRICARE. While parts of Vega's and Marlowe's testimony corroborated that some of the information in the altered notes was false, their testimony was cumulative of the key evidence supporting Counts 15 and 16.

---

[1] At oral argument, Harris's counsel stated that he believed that Spheeris and LeSage-Oyamot had not provided testimony related specifically to Vega's and Marlowe's children. Oral Arg. at 4:19–4:32, https://www.youtube.com/watch?v=EMVefFTQEsY. The record shows, however, that Spheeris specifically testified that Vega's child was not her patient and that she did not create the false note that contained Spheeris's name. *See* Trial Tr. at 170–71 (May 3, 2018). And LeSage-Oyamot specifically testified that Marlowe's child was not her patient and that she did not create the false note that contained LeSage-Oyamot's name. *See* Trial Tr. at 76 (May 3, 2018).

For the above reasons, we conclude that the Confrontation Clause violations were harmless beyond a reasonable doubt. *See id.* ("[W]e assess [harmlessness] by considering the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, and, of course, the overall strength of the prosecution's case." (quotation marks and citation omitted)).

3.      Harris makes several arguments challenging the district court's admission of Agent Salazar's summary testimony and the summary charts. Harris contends that the record cites on page thirty-five of her opening brief show that she raised all her arguments in the district court. We have reviewed those record cites, which include Harris's oppositions to the government's motions in limine to admit summary testimony and charts, and they do not show that she sufficiently raised the arguments she makes on appeal. Thus, all her arguments challenging the summary testimony and charts are subject to plain error review. *See United States v. Hong*, 938 F.3d 1040, 1046 (9th Cir. 2019).

Harris presents no legal argument showing that she has satisfied all the plain error factors. Her entire plain error argument consists of two conclusory statements with no legal citations. Thus, Harris fails to show that the district court plainly erred in admitting Agent Salazar's summary testimony and the summary charts.

6

4.     Harris argues that the aggravated identity theft statute, 18 U.S.C. § 1028A, required the government to prove that her fraudulent use of Spheeris's identification as the rendering provider was material, i.e., it influenced TRICARE to pay the false claims. She contends that the evidence was insufficient to support this supposed materiality requirement. Harris's argument is misplaced because § 1028A includes no materiality element (but even if it did, there was sufficient evidence to prove materiality).

Harris confuses the elements of § 1028A with the elements of wire fraud, the predicate offense here. While § 1028A can be predicated upon the commission of wire fraud (which includes a materiality requirement), § 1028A itself does not require that the government prove materiality. But even were that not so, Harris's argument fails. Witnesses testified that TRICARE would have refused to pay had it known that the rendering provider information shown on the claim forms was inaccurate. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Harris's fraudulent use of Spheeris's identification influenced TRICARE's decision to pay the claims. *See Hong*, 938 F.3d at 1047.

5.     Harris appeals from the forfeiture order, arguing: (1) the district court abused its discretion by refusing to hold an evidentiary hearing on forfeiture; (2) the forfeiture notice in the indictment was insufficient under Federal Rule of

Criminal Procedure 32.2(a); (3) the forfeiture notice limited the forfeiture amount to proceeds derived from the eleven specific wire uses charged in the indictment and thus it was improper to order forfeiture of proceeds related to the entire scheme; and (4) "[t]he Government [could not] simply guess that all bills submitted on consecutive dates were fraudulent and [was required to] provide actual proof of false claims, or extrapolate based on a scientifically valid method." Harris also argues that the restitution order should be vacated for these same reasons.

Harris fails to show that the district court abused its discretion by refusing to hold an evidentiary hearing. She asserted in the district court that an evidentiary hearing was necessary to present expert testimony on proper sampling and extrapolation methods and to disprove the double-billing scheme. The district court held that expert testimony was unnecessary because the government's forfeiture calculations rested on the trial evidence, not extrapolation or sampling, and that Harris sought to challenge the trial evidence improperly. The district court's conclusions are reasonable and supported by the record. Thus, the district court did not abuse its discretion by refusing to hold an evidentiary hearing on forfeiture.

Harris's argument challenging the sufficiency of the forfeiture notice in the indictment is unavailing. Federal Rule of Criminal Procedure 32.2(a) requires the

8

government to provide a notice in the indictment "that the government will seek the forfeiture of property . . . in accordance with the *applicable statute*" (emphasis added). The indictment cited 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C), which are the "applicable statute[s]" authorizing criminal forfeiture for wire fraud. *See United States v. Lo*, 839 F.3d 777, 791 (9th Cir. 2016) ("[W]here the government includes a criminal forfeiture allegation pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c), forfeiture is authorized under § 981 even though that section typically governs civil, rather than criminal, forfeiture."); *see also* 18 U.S.C. § 981(a)(1)(C) (providing that proceeds traceable to "specified unlawful activity," which includes by reference wire fraud under 18 U.S.C. § 1343, are subject to forfeiture). Thus, the government's forfeiture notice complied with Federal Rule of Criminal Procedure 32.2(a).

We reject Harris's argument that the forfeiture notice limited the forfeiture amount to proceeds derived from the eleven specific wire fraud counts charged in the indictment. Section 981 authorizes the government to seek forfeiture of all proceeds obtained from the fraudulent scheme of a wire fraud offense, s*ee Lo*, 839 F.3d at 793, and nothing in the indictment suggests that the government was limiting itself to the proceeds derived only from the eleven charged offenses. Rather, the indictment cited and tracked the language of § 981, which notified

Harris that the government would be seeking forfeiture of all proceeds obtained from her fraudulent scheme.

Harris challenges the methodology used to calculate the forfeiture amount. The government must prove the forfeiture amount by a preponderance of the evidence, *see United States v. Christensen*, 828 F.3d 763, 822 (9th Cir. 2015), and we review the district court's forfeiture determination for clear error, *see United States v. Newman*, 659 F.3d 1235, 1243–44 (9th Cir. 2011), *abrogated on other grounds by Honeycutt v. United States*, 137 S. Ct. 1626 (2017). Based on the trial evidence, the district court held that the forfeiture amount of $320,641 was appropriate. This amount is not clearly erroneous as it is directly supported by the evidence. Harris urges, however, that the government needed to conduct statistical sampling and extrapolation. We are not persuaded. The district court can base a forfeiture amount "on evidence already in the record," Fed. R. Crim. P. 32.2(b)(1)(B), and Harris identifies no authority that requires the government to prove the forfeiture amount through statistical sampling and extrapolation.

Because Harris's arguments challenging the forfeiture order lack merit, her argument that the restitution order should be vacated for the same reasons also fails.

6.      Harris challenges the district court's calculation of the intended loss amount under United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1. She

argues that the intended loss amount was inflated because: (1) the loss amount "was not based on any verified empirical data or scientific methodology"; (2) the numbers were improperly extrapolated from a nonrandom sample; (3) "Agent Salazar lacked the education, experience, training, and formal methodology to appropriately calculate a loss amount"; (4) the "formal process [for calculating overpayments] identified in the TRICARE operations manual" was not followed; (5) "the appropriate loss amount is only the loss attributable to the specific patients discussed at trial"; (6) the loss amount should be based on the amounts Harris received, not the billed amounts; and (7) the loss amount "should be reduced by the value of medically necessary services rendered to a patient." Harris also argues that the restitution order should be set aside for these same reasons.

"A district court's factual determinations, including the amount of loss in cases of fraud, are reviewed for clear error." *United States v. Popov*, 742 F.3d 911, 914 (9th Cir. 2014).

We reject Harris's first two arguments because the loss amount was based on the trial evidence—TRICARE records and testimony, which showed that Harris engaged in a pattern and practice of double billing. We also reject her third argument, because even if Agent Salazar was not qualified to calculate the loss amount, Harris does not explain how this shows that the district court's loss amount calculation was clearly erroneous. Harris's fourth argument is frivolous, as

11

she provides no explanation why the court was bound by the TRICARE operations manual in calculating the loss amount. Her fifth argument is not persuasive because she cites no legal authority supporting that the loss amount must be limited to the loss attributable to the specific patients discussed at trial.

As to Harris's sixth argument, she fails to show that the district court clearly erred in relying on the billed amounts. Under U.S.S.G. § 2B1.1, billed amounts "constitute prima facie evidence of the amount of the intended loss," U.S.S.G. § 2B1.1, cmt. n.3(F)(viii), and Harris bears the burden of rebutting that presumption, *see Popov*, 742 F.3d at 916 ("[T]he parties may introduce additional evidence to support arguments that the amount billed overestimates or understates the defendant's intent."). Harris claims that she never intended to receive the billed amounts because she knew that TRICARE paid a fixed amount under her contract with TRICARE and she "knew the rules and had worked in the field for many years," but she cites no evidence supporting these assertions. Her arguments, unsupported by any evidence, are insufficient to show that she adequately rebutted the presumption that the billed amounts reflected the intended loss amount. *See United States v. Walter-Eze*, 869 F.3d 891, 913 (9th Cir. 2017) (holding that "counsel's arguments, unsupported by any evidence at trial or sentencing, that [defendant] was familiar with Medicare's reimbursement practices or that she did not expect to recoup the full billed amount" were insufficient to

12

rebut the presumption).  Because she does not point to any rebuttal evidence that she presented, she fails to show that the district court clearly erred in relying on the billed amounts.[2]

Harris's final argument is that the loss amount should be reduced by $84,710, the value of legitimate services that were rendered by therapists (according to Harris), but which were improperly billed using Spheeris's credentials.  Harris makes the conclusory assertion that "services were provided to patients and were medically necessary," but she identifies no evidence in the record supporting her claim that services equivalent to $84,710 had been legitimately rendered.  She therefore fails to demonstrate that the district court clearly erred by refusing to reduce the loss amount by $84,710.

In sum, Harris fails to show that the district court's intended loss amount

---

[2] During oral argument, Harris's counsel suggested that the district court prevented Harris from presenting this rebuttal evidence when it denied Harris's request for an evidentiary hearing.  Oral Arg. at 40:00–40:10, https://www.youtube.com/watch?v=EMVefFTQEsY.  Based on our review of the record, however, in requesting an evidentiary hearing, Harris's counsel never informed the district court that Harris intended to present evidence about the amounts she intended to receive from TRICARE.

We recognize that, based on our independent review of the record, Harris submitted some evidence from which it could be inferred that the TRICARE reimbursement rates were fixed and that she had signed a contract agreeing to those fixed rates.  Harris neither cites this evidence nor explains how the district court's loss amount was clearly erroneous given this evidence.  Even if Harris had done so, however, this evidence could not likely have established clear error, because the evidence says little about her familiarity with TRICARE's reimbursement practices and whether she intended to receive the billed amounts.

was clearly erroneous. Because Harris's arguments challenging the loss amount lack merit, her argument that the restitution order should be vacated for the same reasons also fails.

7. Harris appeals from the district court's imposition of a sentencing enhancement for obstruction of justice under U.S.S.G. § 3C1.1. She argues that the district court's factual findings supporting the enhancement, including that Harris acted willfully, were erroneous. We review the district court's findings for clear error. *See United States v. Castro-Ponce*, 770 F.3d 819, 821 (9th Cir. 2014).

The district court agreed with the presentence report's findings that after Harris had received a grand jury subpoena, Harris approached Fiesta and told Fiesta that Fiesta had to plead guilty to wire fraud because Harris had a doctor's note showing that Harris was not responsible for the audit. Based on these findings, the district court determined that imposition of the enhancement was proper because Harris "was attempting to . . . put over . . . the responsibility [on] Abigail Fiesta."[3]

The district court's findings are directly supported by Fiesta's testimony at trial. Fiesta testified that Harris called Fiesta and asked to meet with her. During their private conversation, Harris told Fiesta to plead guilty and explained that

_____

[3] As far as we can tell from the record, nothing suggests that the government pursued charges against Fiesta related to Harris's fraudulent scheme.

14

Harris had a doctor's note saying that she was out for surgery during the audit. That Harris initiated the conversation with Fiesta and told Fiesta to plead guilty to uncharged crimes is evidence supporting that Harris acted willfully. *See United States v. Manning*, 704 F.3d 584, 585 (9th Cir. 2012) (stating that "willfully" under U.S.S.G. § 3C1.1 "requires that the defendant consciously act with the purpose of obstructing justice" (quotation mark and citation omitted)). The district court's findings are not clearly erroneous.

**AFFIRMED.**