RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0033p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

　　　　　　　　　　　　　　　　*Plaintiff-Appellant,*

　　　　*v.*

PHILIP E. MICHAEL, II,

　　　　　　　　　　　　　　　　*Defendant-Appellee.*

No. 17-5626

_____

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:16-cr-00101-1—Charles R. Simpson, III, District Judge.

Argued:  January 31, 2018

Decided and Filed:  February 20, 2018

Before:  SUHRHEINRICH, SUTTON, and BUSH, Circuit Judges.

_____

### COUNSEL

**ARGUED:**  Terry M. Cushing, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellant.  Nicole S. Elver, DRESSMAN BENZINGER LA VELLE PSC, Louisville, Kentucky, for Appellee.  **ON BRIEF:**  Terry M. Cushing, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellant.  Nicole S. Elver, Kent Wicker, DRESSMAN BENZINGER LA VELLE PSC, Louisville, Kentucky, for Appellee.

_____

### OPINION

_____

SUTTON, Circuit Judge.  What does it mean to "use[]" someone else's "means of identification"?  18 U.S.C. § 1028A(a)(1).  The question arises in the context of an indictment alleging that Philip Michael used a doctor's means of identification (his name and identification

number) and a patient's means of identification (his name and birth date) to request insurance reimbursement for a drug the doctor never prescribed and the patient never requested. Michael claims that the statute covers only impersonations, and he never impersonated anyone. Even if he fraudulently used a doctor's identification number and a patient's name, he says, he still submitted the reimbursement claim in his name. But the statute is not so confined, as the words of the provision and the cases interpreting it show.

## I.

Michael worked as a licensed pharmacist at the Aracoma Pharmacy in Chapmanville, West Virginia. He separately co-owns another pharmacy in West Virginia and one in Pennsylvania. The government suspected that Michael used all three pharmacies to distribute on-demand prescription drugs, worth more than $4 million, over the Internet in violation of federal law.

A grand jury returned a multi-count indictment against Michael and several others for crimes arising out of the scheme. Two of the counts deserve mention. Count 7 charged him with committing health care fraud by "fraudulently submitt[ing] a claim for payment to Humana Insurance Company for dispensing medication . . . which was never dispensed." R. 78 at 24; *see* 18 U.S.C. § 1347. And Count 8 charged him with committing aggravated identity theft by using the "identifying information" of a doctor and a patient "in relation to the [health care fraud] offense." R. 78 at 24–25; *see* 18 U.S.C. § 1028A(a)(1), (c)(11).

The government alleged that, in September 2013, Michael submitted a claim for payment to Humana indicating that A.S. (a doctor) had prescribed the drug Lovaza for P.R. (a patient). The submission included the doctor's National Provider Identifier and the patient's name and birth date. A.S. was not P.R.'s doctor, however. In truth, A.S. did not issue this prescription for Lovaza, and P.R. did not ask Michael to fill a prescription for the drug. After discovering the fraudulent submission, Aracoma's management recalled the submission and fired Michael.

Before trial, Michael moved to dismiss Count 8. Even taking the government's allegations as true, he disclaimed "us[ing]" the "means of identification of another person" in violation of § 1028A. R. 71-1 at 1, 5. The statute requires a person to "assume the identity" of

someone else, he insisted, while the government alleged only that he used the doctor and patient information while acting "under his own name as the dispensing pharmacist." *Id.* at 6. The district court agreed, held that the statute covered only "impersonation," and dismissed Count 8 because it failed to state an offense. R. 135 at 4; *see* Fed. R. Crim. P. 7(c)(1), 12(b)(3)(B)(v).

The government appealed.

## II.

18 U.S.C. § 1028A(a)(1) is a sentencing provision. It imposes a mandatory two-year sentence for anyone who, "[i] during and in relation to any felony violation enumerated in subsection (c), [ii] knowingly transfers, possesses, or uses, [iii] without lawful authority, [iv] a means of identification of another person." No one disputes that health care fraud—alleged in Count 7 of the indictment—is a qualifying predicate felony "enumerated in subsection (c)." *See* 18 U.S.C. §§ 1028A(c)(5), 1347; *United States v. Abdur-Rahman*, 708 F.3d 98, 100–01 (2d Cir. 2013). No one disputes that A.S.'s National Provider Identifier and P.R.'s name and birth date are "means of identification." 18 U.S.C. § 1028(d)(7) ("any name or number that may be used . . . to identify a specific individual"). And no one disputes that whatever Michael did with their identifying information, he did "without lawful authority." *See United States v. Lumbard*, 706 F.3d 716, 725 (6th Cir. 2013).

That leaves this question: Did Michael "transfer[], possess[], or *use*[]" A.S. and P.R.'s "means of identification" even though he did not pretend to *be* them? 18 U.S.C. § 1028A(a)(1) (emphasis added).

"Use" has more than one meaning, and this is not the first time Congress has vexed the courts by using it. *See Watson v. United States*, 552 U.S. 74 (2007); *Bailey v. United States*, 516 U.S. 137 (1995); *Smith v. United States*, 508 U.S. 223 (1993). But context usually goes a long way to resolving these interpretive disputes, and it does just that here. The object of "use[]" is "a means of identification." 18 U.S.C. § 1028A(a)(1). To "use" a means of identification in this setting is "[t]o convert to one's service" or "to employ" the means of identification. Webster's New International Dictionary 2806 (2d ed. 1942); *see also* Webster's New International Dictionary 2523 (3d ed. 2002) ("to put into action or service[;] have recourse to or

enjoyment of"); Oxford English Dictionary Online (3d ed. 2011) ("[t]o put (an instrument, implement, etc.) to practical use; *esp.* to make use of (a device designed for the purpose) in accomplishing a task"); Black's Law Dictionary 1776 (10th ed. 2014) ("[t]o employ for the accomplishment of a purpose; to avail oneself of"). That is a fair, and fairly straightforward, way to construe the sentence.

Several cases adopt this meaning of "use" in construing criminal laws in a similar context. *See, e.g.*, *United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014) (18 U.S.C. § 921(a)(33)(A)(ii)); *Jones v. United States*, 529 U.S. 848, 854–55 (2000) (18 U.S.C. § 844(i)); *United States v. Chapman*, 866 F.3d 129, 132 (3d Cir. 2017) (U.S.S.G. § 4B1.2(a)(1)); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 880 (9th Cir. 2002) (18 U.S.C. § 2701(c)(2)); *United States v. Ramsey*, 237 F.3d 853, 859 (7th Cir. 2001) (U.S.S.G. § 3B1.4).

Measured by this reading of the statute, Michael's conduct violated it—or at least a jury could find he violated it. (We are at the indictment stage.) As alleged, Michael used A.S.'s ID number and P.R.'s name when he created and submitted a fraudulent prescription order to obtain reimbursement money from Humana. That, it seems to us, represents a natural interpretation of the provision, and a fair application of it here.

Sometimes the object of a verb limits the meaning of the verb, it is true. Saying a person "uses drugs" might suggest in context that the verb means "to consume . . . regularly." Webster's New International Dictionary 2524 (3d ed. 2002). Other examples abound of ways in which the object of "use" might change the meaning of use. *See, e.g.*, Oxford English Dictionary Online (3d ed. 2011) ("[t]o ingest or consume (*a medicine*) or avail oneself of (*a treatment*) in order to gain benefit"); *id.* ("[t]o employ (*a weight, measure, or other abstract system*) as a standard").

Michael thinks that the statutory object of the sentence, using a "means of identification" for fraudulent purposes, does something similar: that it confines the coverage of the law only to impersonations. We don't see it. The provision increases the sentence for anyone convicted of health care fraud who "uses" the "means of identification" of someone else. 18 U.S.C. § 1028A(a)(1). That language no doubt covers impersonations, and impersonations may well

have been one of the targets, perhaps even the principal target, of this sentencing-enhancement statute. But it is not unusual for the words of laws to go beyond the central, even the sole, motivation for enacting them. No matter what happened here, only the words of a law, not the motivations of its authors, may cabin (or for that matter extend) its reach. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79–80 (1998).

The Supreme Court rejected a similar argument in another case about "uses." *See Smith v. United States*, 508 U.S. 223 (1993). That statute imposed mandatory minimum sentences for anyone who "uses . . . a firearm" "during and in relation to . . . [a] drug trafficking crime." 18 U.S.C. § 924(c)(1). The petitioner argued that combining "uses" with "a firearm" meant that the statute criminalized only a specific kind of use, using a gun "for its intended purpose" by firing it as a weapon rather than, as happened there, trading it for drugs. *Id.* at 229–30. The Court disagreed. Although shooting a firearm may be "the first [example] to come to mind" for most people in thinking about using a firearm, that is not the only way to interpret the term, as an individual "can use a firearm in a number of ways." *Id.* at 230; *cf. Muscarello v. United States*, 524 U.S. 125, 130–31 (1998).

*Smith* was a strong candidate for allowing an object to limit its verb in that context, as the dissent pointed out. *See* 508 U.S. at 242 (Scalia, J., dissenting). But the argument failed. This case offers a far weaker claim. Pairing "uses" with "a means of identification" does not point us to any specialized definition, much less one that suggests "uses" refers only to assuming an identity or passing oneself off as a particular person.

Our precedent supports this interpretation. In *United States v. Miller*, we ruled for a defendant who argued that "uses" includes "act[ing] on [someone else's] behalf." 734 F.3d 530, 541 (6th Cir. 2013). In *United States v. Medlock*, we pointed to our Pattern Jury Instructions for § 1028A(a)(1), which define "uses" to include "display[ing], barter[ing], or refer[ring] to means of identification as such." 792 F.3d 700, 706 (6th Cir. 2015). And in *United States v. White*, we affirmed the conviction of a travel agent who submitted false IDs to airlines on behalf of her clients even though she never pretended to be her clients. 846 F.3d 170, 177–78 (6th Cir. 2017).

The definitions noted in *Miller* and *Medlock* cover the conduct alleged in this case. A jury readily could find that a pharmacist who files a claim with a patient's insurer to recoup costs the patient would otherwise have to pay "refer[s] to means of identification as such" and "acts on [that patient's] behalf." And *White* rejected a cramped reading of "uses," showing that it covers more than assuming another person's identity. Otherwise, that conviction would have been reversed, not affirmed.

Michael prefers another reading of these decisions. He points to *Miller*'s statement that § 1028A does not cover "merely lying about what [other people] did" or did not do. 734 F.3d at 541. But if *Miller* established a requirement that a defendant impersonate someone else, as Michael claims, our opinion in *White* four years later would have come out differently. White lied about what her clients had done by creating the impression that they had served in the military. But she never assumed their identities. 846 F.3d at 177. *Miller* also elaborated on these issues in a way that undermines Michael's position. Miller's lies about what other individuals did, the court reasoned, were insufficient where he acted on behalf of *an entity* rather than on behalf of *individuals*. 734 F.3d at 541 n.5. Michael, however, "portrayed himself as acting on behalf of" two individuals: A.S. and P.R. *Id.*

What of *Medlock*? The defendants operated an ambulance company and transported patients to hospitals for routine dialysis treatment. 792 F.3d at 703. When they requested reimbursement from Medicaid, the defendants mischaracterized the nature of the transports, saying that the patients had required stretchers when they had not. *Id.* at 705. The court held, quite correctly, that submitting false reimbursement requests about the nature of a service provided did not constitute "use" of another's "means of identification" but that forging a doctor's signature to bolster those submissions satisfied the statute. *Id.* at 708, 712. The lie in the first instance turned on the nature of the service being provided to a person—lying about what kind of service someone did or did not provide—not whether the person received a service. The lie in the second instance turned on whether a doctor had actually approved the submissions—again about something more than what kind of service was, or was not, provided.

Michael insists that the statute did not cover the conduct in *Medlock* because the defendants merely lied about "what they were entitled to," and he at most did the same thing

here.   Oral Arg. at 15:58–16:22.   But that reality does not invariably free someone from coverage, as *White* illustrates.  That defendant received something she and her clients were not entitled to—lower airfares—and yet we upheld that conviction.

When, then, is lying about what one is entitled to covered by the statute?  And when not? The answer turns on causation, or at least causation often helps to answer the question.  The salient point is whether the defendant used the means of identification to further or facilitate the health care fraud.  Consistent with the words of the statute, the question is whether the defendant used the means of identification "during and in relation to" the predicate felony.  18 U.S.C. § 1028A(a)(1); *see also Smith*, 508 U.S. at 238 ("during and in relation to" means the use "must facilitat[e]" underlying criminal activity (alteration original)).  In *Medlock*, the health care fraud was "misrepresent[ing] *how and why* the [patients] were transported."  792 F.3d at 707 (emphasis original).  The defendants did not use patient names "during, in relation to, or for the purpose of helping to commit" that felony because they really did transport those patients.  *Id.* at 706.   They legitimately listed patient names in rendering the services underlying the submission.  Forging a doctor's signature to bolster the submissions, in marked contrast, facilitated the health care fraud.  *Id.* at 712.  In one instance, the defendant used the means of identification in spite of the fraud; in the other, she used the means of identification because of the fraud.

Think of that distinction here.  Had Michael, in the course of dispensing drugs to a patient under a doctor's prescription, only inflated the amount of drugs he dispensed, the means of identification of the doctor and patient would not have facilitated the fraud.  *See id.* at 707–08. But that is not what he did.  He used A.S. and P.R.'s identifying information to fashion a fraudulent submission out of whole cloth, making the misuse of these means of identification "during and in relation to"—indeed integral to—the predicate act of healthcare fraud.

Michael also invokes § 1028A's title:  "Aggravated identity theft."  The title, we suppose, could suggest that "uses" refers only to scenarios in which a defendant assumes another's identity.  But that is not the only way to construe it.  Black's Law Dictionary defines "identity theft" as "[t]he unlawful taking and use of another person's identifying information for fraudulent purposes."  Black's Law Dictionary 863 (10th ed. 2014).  This definition says nothing

about assuming another person's identity. More to the point is what the rest of § 1028A(a)(1)— its text rather than its title—says. "[T]he title of a statute and the heading of a section cannot limit the plain meaning of the text." *Bhd. of R.R. Trainmen v. Baltimore & O. R. Co.*, 331 U.S. 519, 528–29 (1947); *see Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004). Just as it is dangerous to judge a book by its cover, it is dangerous to judge a statute by its title.

Michael insists, last of all, that allowing § 1028A to reach more than passing oneself off as someone else will lead to limitless liability—in truth limitless sentencing enhancements. But the statute has other limits. The government must prove "that the defendant knew that the means of identification at issue belonged to another person." *Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009). Then there is the causation component noted above—that the words "during and in relation to" preclude the government from raising sentences for any healthcare fraud. 18 U.S.C. § 1028A(a)(1). So long as the statute requires the government to connect the misuse of means of identification to facilitation of the fraud, *Smith*, 508 U.S. at 238, there will be plenty of sand to keep us from sliding to the bottom of the slope.

We have nothing to say about whether the government will be able to make the requisite showings at trial. All that matters is that the indictment "contains the elements of the offense charged." *Hamling v. United States*, 418 U.S. 87, 117–19 (1974).

We reverse the district court's decision and remand for proceedings consistent with this opinion.