FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

SHEILA HARRIS,
*Defendant-Appellant.*

No. 19-10006

D.C. No.
1:17-cr-00001-HG-1

OPINION

Appeal from the United States District Court
for the District of Hawaii
Helen W. Gillmor, District Judge, Presiding

Argued and Submitted October 22, 2020
Honolulu, Hawaii

Filed December 29, 2020

Before: J. Clifford Wallace, Carlos T. Bea, and
Mark J. Bennett, Circuit Judges.

Opinion by Judge Bennett

## SUMMARY[*]

### Criminal Law

The panel affirmed convictions on two counts of aggravated identity theft under 18 U.S.C. § 1028A in a case in which the defendant, the owner and operator of a business that provided therapeutic services, fraudulently billed a government health care program for speech therapy services provided to children of military families.

The defendant's scheme included submitting claims that falsely identified a speech pathologist as the rendering provider for dates on which the speech pathologist provided no services. The panel held that the defendant's use of the speech pathologist's name and National Provider Identifier number on the claim forms was "during and in relation" to the commission of wire fraud, and therefore constituted "use" of another's identification under § 1028A.

The panel addressed the defendant's other challenges in a concurrently filed memorandum disposition.

**\*** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Ronald W. Chapman II (argued), Chapman Law Group, Troy, Michigan, for Defendant-Appellant.

Marion Percell (argued), Chief of Appeals; Kenji M. Price, United States Attorney; United States Attorney's Office, Honolulu, Hawaii, for Plaintiff-Appellee.

## OPINION

BENNETT, Circuit Judge:

A jury convicted Sheila Harris of eleven counts of wire fraud, two counts of aggravated identity theft, and four counts of making false statements relating to health care matters. She appeals from her convictions, her seventy-month sentence, and the orders of restitution and forfeiture. In this opinion, we address Harris's argument that her identity theft convictions under 18 U.S.C. § 1028A should be reversed because her conduct did not amount to "use" of another's identification under the statute.[1]

We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.  BACKGROUND

Harris was the owner and operator of a Honolulu business called Harris Therapy, Inc. (Harris Therapy), which provided therapeutic services, including speech, physical, and occupational therapy services. Harris contracted with

---

[1] We address Harris's other challenges in a concurrently filed memorandum disposition.

TRICARE, a government health care program for military members, military retirees, and their families, to provide services to TRICARE beneficiaries.

From 2008 to 2012, Harris fraudulently billed TRICARE for speech therapy services provided to children of military families. Harris's scheme included, among other things, a pattern of double billing and submitting claims to TRICARE that falsely identified Kara Spheeris, a speech pathologist who worked for Harris Therapy, as the rendering provider for dates on which Spheeris provided no services.

The First Superseding Indictment charged Harris with eleven counts of wire fraud, two counts of aggravated identity theft, and four counts of making false statements relating to health care matters. The aggravated identity theft counts alleged that Harris "knowingly . . . use[d], . . . without lawful authority, the means of identification of another person, [J.B. and K.H. (TRICARE beneficiaries), and Spheeris], who was a speech language pathologist, . . . with the intent to commit . . . the wire fraud offense[s] described in Count 1 [and Count 7]."

The government's evidence showed that Harris filled out two claim forms and submitted them to TRICARE—one identified J.B. as the patient and the other identified K.H. as the patient. The forms showed that Spheeris had provided speech therapy services to J.B. and K.H. on certain dates in September 2011. On both forms, Harris entered Spheeris's name as the "Billing Provider" and Spheeris's unique National Provider Identifier (NPI) number for the "Rendering Provider ID." Harris signed both forms using her own name.

The government's evidence also showed that Spheeris did not know that Harris had used her name and NPI number

on the forms, and she never authorized Harris to do so. Spheeris never provided speech therapy services to J.B. or K.H. Indeed, Spheeris did not provide any services to any patients in September 2011 because she was on maternity leave. TRICARE would have denied the claims had it known that Spheeris was not the rendering provider.

After a ten-day trial, the jury convicted Harris on all counts. The district court sentenced Harris to seventy months, and she timely appealed.

## II. STANDARD OF REVIEW

Harris contends that her use of Spheeris's name and NPI number on the claim forms did not amount to "use" under the aggravated identity theft statute, 18 U.S.C. § 1028A. This is a statutory interpretation argument that we review de novo. *United States v. Hong*, 938 F.3d 1040, 1050 (9th Cir. 2019).

## III. DISCUSSION

Under 18 U.S.C. § 1028A(a)(1), "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly . . . uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." It is undisputed that the wire fraud Counts 1 and 7 qualify as predicate felonies "enumerated in subsection (c)," that Spheeris's name and NPI number are "a means of identification of another person," and that Harris had no "lawful authority" to use Spheeris's name and NPI number. Thus, the only issue is whether Harris *used* Spheeris's name and NPI number "during and in relation to" the commission of wire fraud.

We have addressed the meaning of "use" under § 1028A in two cases. In *Hong*, we held that the defendant's actions fell outside the statute. 938 F.3d at 1049–51. We reached the opposite conclusion in *United States v. Gagarin*, 950 F.3d 596, 604 (9th Cir. 2020).

In *Hong*, the defendant owned several massage and acupuncture clinics. 938 F.3d at 1044. Patients, who had received massage and acupuncture treatments, gave the clinics their Medicare identification information believing (incorrectly) that Medicare pays for massages and acupuncture. *Id.* Hong, employing the patients' Medicare information, filed Medicare claims falsely stating that the patients had received not massages and acupuncture but rather "a Medicare-eligible physical therapy service." *Id.* at 1051.

In determining whether Hong's conduct fell within the aggravated identity theft statute, we relied on *United States v. Medlock*, 792 F.3d 700 (6th Cir. 2015). *See Hong*, 938 F.3d at 1050–51. We recognized that in *Medlock*, "[t]he defendants filed Medicare claims falsely stating that stretchers were required [to transport patients], where the use of stretchers would entitle the ambulance service to Medicare reimbursement." *Hong*, 938 F.3d at 1050. The Sixth Circuit held that this conduct was not "use" of another's identification under § 1028A because the defendants "did not attempt to pass themselves off as anyone other than themselves. [They] misrepresented *how and why* the beneficiaries were transported, but they did not use those beneficiaries' identities to do so." *Medlock*, 792 F.3d at 707.

We determined that Hong's actions were analogous to the defendants' actions in *Medlock*. *Hong*, 938 F.3d at 1051. Thus, we held that Hong did not "use" the patients' information under the statute because he never "attempted to

pass [himself] off as the patients." *Id.* at 1051 (brackets omitted) (quoting *United States v. Berroa*, 856 F.3d 141, 156 (1st Cir. 2017)). Nor did he "purport to take some other action on another person's behalf." *Id.* (quoting *Berroa*, 856 F.3d at 156). Rather, "Hong provided massage services to patients to treat their pain, and then participated in a scheme where that treatment was misrepresented as a Medicare-eligible physical therapy service." *Id.* Thus, as in *Medlock*, the patients' identities had little to do with furthering or facilitating Hong's fraudulent scheme. *See Gagarin*, 950 F.3d at 603 (characterizing Hong's conduct as "merely misrepresent[ing] the nature of treatment that actual patients of his received"); *see also United States v. Michael*, 882 F.3d 624, 629 (6th Cir. 2018) (reasoning that the defendants in *Medlock* "did not use patient names 'during, in relation to, or for the purpose of helping to commit' [the health care fraud] because they really did transport those patients" (quoting *Medlock*, 792 F.3d at 706)).

In *Gagarin*, we held that the defendant "used" another's identification under § 1028A. 950 F.3d at 603–04. Gagarin prepared a fraudulent insurance application by twice forging her cousin's signature. *Id.* at 603. We reasoned that, unlike the defendant in *Hong* who had "merely misrepresented the nature of treatment that actual patients of his received," *id.*, "Gagarin 'attempted to pass herself off' as her cousin through forgery and impersonation," *id.* at 604 (brackets omitted) (quoting *Hong*, 938 F.3d at 1051). And Gagarin's "use of [her cousin's] means of identification was . . . central to the fraud and 'furthered and facilitated' its commission." *Id.*

While *Hong* and *Gagarin* are instructive, neither directly controls the outcome here. Unlike the defendant in *Hong*, Harris's use of Spheeris's identification was central to the

wire fraud. And unlike the defendant in *Gagarin*, Harris did not try to pass herself off as Spheeris through forgery or impersonation. In *Gagarin*, however, we cited and relied on a recent Sixth Circuit case, *Michael*, 882 F.3d 624. *See Gagarin*, 950 F.3d at 603 & n.1. *Michael* applied § 1028A to circumstances nearly identical to those here, and we agree with its reasoning.

In *Michael*, the defendant, a licensed pharmacist, allegedly submitted a claim for payment to an insurance company showing that a doctor had prescribed a drug to a patient. 882 F.3d at 625. "The submission included the doctor's [NPI number] and the patient's name and birth date." *Id.* In truth, the doctor was not the patient's doctor, the doctor had not prescribed the drug, and the patient did not ask the defendant to fill a prescription for the drug. *Id.* The district court held that § 1028A covered only impersonation and dismissed the aggravated identity theft count before trial, and the government appealed. *Id.* at 626. The Sixth Circuit reversed, holding that a jury could find that the defendant "used" the doctor's and patient's identifying information under § 1028A. *Id.* at 626–27.

The Sixth Circuit first looked at the plain meaning of "use." *Id.* at 626. "To 'use' a means of identification in this setting is 'to convert to one's service' or 'to employ' the means of identification." *Id.* (brackets omitted) (quoting Webster's New International Dictionary 2806 (2d ed. 1942)). The court then highlighted that the statutory text does not suggest that "use" "refers only to assuming an identity or passing oneself off as a particular person." *Id.* at 627. Finally, after reconciling its interpretation with other

Sixth Circuit cases and distinguishing *Medlock*,[2] the court turned back to the statute and reasoned that "[c]onsistent with the words of the statute, the question is whether the defendant used the means of identification 'during and in relation to' the predicate felony." *Id.* at 628 (quoting 18 U.S.C. § 1028A(a)(1)). Thus, "[t]he salient point is whether the defendant used the means of identification to further or facilitate the health care fraud." *Id.* Under this interpretation, the court held that, as alleged, the defendant used the doctor's and patient's "identifying information to fashion a fraudulent submission out of whole cloth, making the misuse of these means of identification 'during and in relation to'—indeed integral to—the predicate act of healthcare fraud." *Id.* at 629.

So too here. By inputting Spheeris's name and NPI number in the forms, Harris employed or used Spheeris's identification. And that use was "during and in relation" to the commission of wire fraud, as Harris used Spheeris's "identifying information to fashion a fraudulent submission out of whole cloth." *Id.* This portion of Harris's scheme could not have succeeded otherwise, as Spheeris was not a participant in it. Harris did not merely inflate the scope of services rendered during an otherwise legitimate appointment; Harris manufactured entire appointments that never occurred. Indeed, Spheeris had never rendered any services to the patients listed on the claim forms. Like one

---

[2] The Sixth Circuit distinguished the circumstances in *Michael* from those in *Medlock*: "In *Medlock*, the health care fraud was 'misrepresent[ing] *how and why* the [patients] were transported.' The defendants did not use patient names 'during, in relation to, or for the purpose of helping to commit' that felony because they really did transport those patients. They legitimately listed patient names in rendering the services underlying the submission." *Michael*, 882 F.3d at 628–29 (alterations in original) (citations omitted).

who fraudulently uses another's name and physical credit card or credit card number, Harris fraudulently used Spheeris's name and her NPI number. For these reasons, we hold that Harris's actions constituted "use" under the aggravated identity theft statute.[3]

## IV. CONCLUSION

We **AFFIRM** Harris's two aggravated identity theft convictions.

---

[3] The government also charged Harris with aggravated identity theft for using the identifications of the patients, J.B. and K.H. Harris signed the claim forms on behalf of the patients, signifying that the patients had requested payment of benefits to Harris Therapy. Because neither party has addressed whether this conduct constitutes "use" under § 1028A, neither do we.